**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

SALEEM HAMID,

                                        Plaintiff,

          v.                                                      No. 05-CV-1358
                                                                    (GLS/DRH)

CYNDEE TEMPLE, Corrections Officer; D.
ALLISON, Corrections Officer; J. COLEMAN,
Corrections Captain; GERALD McDONOUGH,
Corrections Officer; DEAN FERARRO,
Corrections Officer; ROCCO MANSUETO,
Corrections Officer; BOTSFORD, Corrections
Officer; WELLS,[1] Corrections Officer; DANIEL
MIRALDI, Corrections Sergeant; ELLISON,
Lieutenant; DAVID L. MILLER, Superintendent,
Eastern Correctional Facility; DONALD
SELSKY, Director of the Special Housing Unit;
GLENN S. GOORD, Commissioner; NEW
YORK STATE DEPARTMENT OF
CORRECTIONAL SERVICES; and STATE OF
NEW YORK,

                                        Defendants.

_____

**APPEARANCES:**                          **OF COUNSEL:**

SALEEM HAMID
90-B-1066
Orleans Correctional Facility
35-31 Gaines Basin Road
Albion, New York 14411

HON. ANDREW M. CUOMO                MEGAN M. BROWN, ESQ.
Attorney General for the            Assistant Attorney General
   State of New York
Attorney for Defendants

_____

          [1] It appears from the docket that defendant Wells has never been served with
process or otherwise appeared in the action.  See Docket No. 15 (summons returned
unexecuted); see also Docket No. 32 (answer filed for all defendants except Wells);
Docket No. 40-30 (memorandum of law filed for all defendants except Wells).  Pursuant to
Fed. R. Civ. P. 4(m), service of process upon Wells was not completed within the 120
days allowed by the rule and the complaint as to this defendant should be dismissed
without prejudice for that reason.  See also N.D.N.Y.L.R. 4.1(b).

The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[2]

Plaintiff pro se Saleem Hamid ("Hamid"), an inmate in the custody of the New York State

Department of Correctional Services ("DOCS"), brings this action pursuant to 42 U.S.C. §

1983 alleging that defendants, thirteen DOCS employees as well as DOCS, and the State

of New York, violated his constitutional rights under the First, Fourth, Fifth, Sixth, Eighth,

and Fourteenth Amendments.  Compl. (Docket No. 1).  Presently pending is defendants'

motion for summary judgment pursuant to Fed. R. Civ. P. 56.  Docket No. 40.  Hamid

opposes the motion.  Docket No. 44.  For the following reasons, it is recommended that

defendants' motion be granted in part and denied in part.


### I. Background

The facts are related herein in the light most favorable to Hamid as the non-moving

party.  See subsection II(A) infra.

At all relevant times, Hamid was incarcerated at Eastern Correctional Facility

("Eastern").  Compl. ¶ 25.  On April 1, 2004, during an inmate head count, defendant

Temple approached Hamid's cell and heard Hamid's radio playing through external

---

[2]This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

speakers and not headphones.  Id.; T. 4, 51[3]; Temple Aff. (Docket No. 40-11) ¶¶ 11-12. During rounds the previous evening, Hamid had been warned by defendant Allison that he must utilize headphones to listen to his radio for security reasons.  T. 4, 9, 41-42, 49; Temple Aff. ¶¶ 13, 16.  Temple gave several orders for Hamid to surrender his radio.  T. 4; Temple Aff. ¶ 17.  The radio would not fit through the cell window and Temple entered Hamid's cell to retrieve the radio.[4]  T. 51, 55; Temple Aff. ¶ 18.

Upon Temple's entry into the cell, cans fell from behind Hamid's door.  T. 6.  According to Temple, Hamid reached for a can top which she believed could be used as a weapon while Hamid states that he was merely attempting to clear a path for Temple.  T. 6, 55; Temple Aff. ¶ 18.  Temple stepped on Hamid's hand and alleges that Hamid threw his radio at her, hitting her in the face.  T. 55-56; Temple Aff. ¶¶ 18-19.  Hamid contends that he did not throw the radio at Temple but handed it to her.  T. 6.  Multiple inmates testified that they did not hear any profane words exchanged and that there were no sounds of a struggle or ensuing altercation, but none of the inmates actually witnessed the exchange.  Id. 13-14, 24, 26-27, 32-34.

Temple left the cell with the radio, secured it, and walked to an office downstairs.  T. 7,

---

[3] "T." followed by a number refers to the pages of the transcript of Hamid's disciplinary hearing included with defendants' motion for summary judgment.  Docket No. 40-7.

[4] Temple entered Hamid's cell alone with no other corrections officers in the cell block.  T. 51.  While Hamid argues that this was contrary to DOCS policy, multiple defendants stated that this was common practice which none would have hesitated to follow.  See Mansueto Aff. (Docket No. 40-15) ¶¶ 11-13; Ferraro Aff. (Docket No. 40-17) ¶¶ 11-13; Miraldi Aff. (Docket No. 40-19) ¶¶11-12; Farrell Aff. (Docket No. 40-24) ¶¶ 19-20.  Hamid also alleges that Temple "reeked of alcohol" when she entered his cell. Compl. ¶ 26.

55; Temple Aff. ¶ 20.  Multiple inmates heard a loud crash as Temple exited the cell block but did not witness what caused the crash.[5]  T. 14, 19, 22, 28-29, 35.  Additionally, during the disciplinary hearing, Hamid viewed his radio which he testified was not in the same working condition as when it was removed from his cell by Temple.  T. 60-61.

Defendant McDonough saw Temple immediately after the incident and stated that Temple was "visibly upset" and bleeding.  T. 46.  Temple wrote a misbehavior report and went to the infirmary where pictures of her injuries were taken and she completed an injury report.  Temple Aff. ¶ 21; Docket No. 40-14 at 13, 21; Docket No. 40-22.  Temple's hand was bleeding and her face was swollen.  T. 56.  Temple returned to work the following day, but asserts that she had two black eyes by the conclusion of her shift.  Temple Aff. ¶ 22.  Temple further asserts that on April 3, 2004, she went to an emergency room where she was diagnosed and treated for a broken nose and whiplash and that this incident ultimately led to her retirement from DOCS.  Id.  ¶¶ 3, 23-24; T. 58.  Multiple inmate-witnesses state that immediately after the incident and the days which followed, Temple did not appear to have sustained any physical injuries.  T. 15, 20, 23, 28-29, 34, 36.

While Temple proceeded to the office, defendants Mansueto and Ferraro, the corrections officers on corridor patrol and escort duty, arrived at Hamid's cell to escort him to the Special Housing Unit[6] ("SHU").[7]  Manseuto Aff. (Docket No. 40-15)  ¶¶ 4-7; Ferraro

---

[5] One inmate, W. Neal, claims that he heard someone say that Temple had broken Hamid's radio, but he could not identify the speaker.  T. 30.

[6] "Due to the nature of the incident, assault on staff, it was standard protocol to take the inmate to SHU."  Miraldi Aff. ¶ 17.

[7]SHUs exist in all maximum and certain medium security facilities.  The units "consist of single-occupancy cells grouped so as to provide separation from the general

Aff. (Docket No. 40-17) ¶¶ 4-7.  Mansueto and Ferraro met defendant Miraldi at Hamid's cell, told Hamid to exit the cell, pat-frisked and handcuffed Hamid, and escorted him to SHU.  Manseuto Aff. ¶¶ 8-10; Ferraro Aff. ¶¶ 8-10; Miraldi Aff. (Docket No. 40-19) ¶¶ 17-19.

Mansueto, Ferraro, and Miraldi contend that upon arrival at SHU, defendant Farrell proceeded with a standard strip-frisk.  Mansueto Aff. ¶ 17; Ferraro Aff. ¶ 17; Miraldi Aff. ¶ 25; Farrell Aff. (Docket No. 40-24) ¶ 8.  Hamid contends that defendants Botsford and Wells "physically assaulted and sexually abused [him]" upon their entry into the unit, beating him before the strip-search while Miraldi, Mansueto, and Ferraro stood by.  Compl. ¶¶ 29-31.[8]  Additionally, while defendants made Hamid engage in multiple cavity searches, either Botsford or Wells appeared to be videotaping the strip-search.  Id. ¶ 31.  Hamid also claims that after the strip-frisk was concluded, Botsford and Wells escorted him back to his SHU cell and when they removed his handcuffs, they inflicted so much pain that he urinated on himself.  Id. ¶ 32.

Miraldi, Mansueto, and Ferraro deny being in the room, laughing, or making any other comments while the strip-frisk occurred and did not view any other defendants use force on Hamid.  Manseuto Aff. ¶¶ 18-19; Ferraro Aff. ¶¶ 18-19; Miraldi Aff. ¶¶ 26-27.  Additionally, while Farrell explained that sometimes a cavity search needs to be performed multiple times if the inmate is not cooperating, he stated that he has "never used the strip frisk procedure to try to humiliate or embarrass the plaintiff . . ." and no other individuals were

---

population . . . ."  N.Y. Comp. Codes R. & Regs. tit. 7, § 300.2(b) (2007).  Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required.  Id. at pt. 301.

[8] "Officers Botsford and Wells were not involved in the strip frisk procedure of [Hamid] on April 1, 2004."  Farrell Aff. ¶ 14.

present during the procedure.  Farrell Aff. ¶¶ 10-14, 18-19.

On April 4, 2004, a Tier III disciplinary hearing[9] was commenced before defendant Coleman.  See Docket No. 40-7.  Prior to the hearing, Hamid had requested and received assistance from Mr. Cosh and obtained copies of the misbehavior report dated April 2, 2004, the log book entries for his cell blocks, and the investigative reports.  T. 2-3.  Hamid was not presented with the unusual incident ("UI") report prior to the hearing because it was not finalized but received it on April 8, 2004.  T. 2, 39.  Additionally, during the hearing Hamid requested and was able to question five inmate-witnesses, Allison, Temple, and McDonough.  See generally T. 2-3.  On April 9, 2004, Coleman announced his disposition, finding Hamid guilty of (1) creating a disturbance, (2) assault on a staff member, (3) interference with an employee, and (4) harassment, and sentenced him to (1) twenty-four months in SHU; (2) the loss of recreation, packages, commissary, and telephone calls for twenty-four months; and (3) the loss of twenty-four months good time credits.  T. 66-67; Docket No. 40-14.

On April 19, 2004, Hamid received a letter from defendant Superintendent Miller stating that his appeal was denied as he had received "a fair and impartial . . . hearing," and "the penalty that was imposed [wa]s justified."  Docket No. 40-23.  However, on June 24, 2004, defendant Selsky reviewed and affirmed the conviction but reduced the penalties to eighteen months as "the nature of [the] misconduct d[id] not warrant [the] penalty imposed." Docket No. 40-9 at 3-4. Additionally, on February 3, 2005, Hamid received another letter

---

[9]DOCS regulations provide for three tiers of disciplinary hearings depending on the seriousness of the misconduct charged.  A Tier III hearing, or superintendent's hearing, is required whenever disciplinary penalties exceeding thirty days may be imposed.  N.Y. Comp. Codes R. & Regs. tit. 7, §§ 253.7(iii), 270.3(a) (2007).

from Selsky stating that while Selsky did "not believe that there [were] sufficient grounds to reconsider the previous decision to modify th[e hearing disposition] . . . [and no f]urther administrative action w[ould] be forthcoming . . , [Hamid would] receive[] a further reduction in . . . confinement time through . . . established time cut procedures . . . ." Id. at 2.[10]

Additionally, on April 4, 2004, Hamid was criminally charged for the incident which occurred three days earlier. Compl. ¶ 41. On or about June 26, 2004, Hamid was arraigned on an indictment charging assault returned by an Ulster County grand jury. Id. ¶ 43. On or about June 13, 2005, the criminal trial commenced. Id. ¶ 44. On or about June 16, 2005, Hamid was found not guiity. Id. ¶ 45. This action followed.


## II. Discussion

In his complaint, Hamid alleges that defendants violated his (1) First Amendment rights by retaliating against him for filing grievances; (2) Fourth, Fifth, and Sixth Amendment rights by subjecting him to false arrest, unlawful indictment in the subsequent criminal prosecution, and prohibiting him from testifying before the grand jury; (3) Eighth Amendment rights by subjecting him to excessive force and failing to intervene therein; (4) Fourteenth Amendment rights by denying him due process during his disciplinary hearing and subsequent criminal indictment; (5) state law rights by maliciously prosecuting and falsely arresting him; and (6) rights under §§ 1985 and 1986.

Defendants move for summary judgment on all claims asserting that (1) the Eleventh

---

[10] Hamid "received an additional [six] month time cut at the SHU facility, serving [twelve] months SHU for the incident." Defs. Statement of Material Facts (Docket No. 40-3) ¶ 42.

7

Amendment bars Hamid's claims against New York State, DOCS, and defendants in their official capacities; (2) Hamid has not administratively exhausted his retaliation remedies for the allegations of sexual and verbal harassment and the use of excessive force; (3) Hamid was not deprived of due process, (4) Hamid is barred by his disciplinary conviction from asserting certain due process claims; (5) Hamid failed sufficiently to allege a retaliation claim; (6) Hamid's claim regarding damage to his radio does not rise to the level of a due process violation; (7) New York Corrections Law § 24 bars Hamid's claims against the State in federal court; (8) Hamid is unable to establish the elements of malicious prosecution; (9) Goord, Ellison, Allison, McDonough, and Botsford were not personally involved; (10) there is no jurisdiction over Wells; and (11) defendants are entitled to qualified immunity.

## A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the case as determined by substantive law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue

for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks summary judgment against a pro se litigant, a court must afford the non-movant special solicitude.  Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006); see also Sealed Plaintiff v. Sealed Defendant #1, __ F.3d __, 2008 WL 3294864, at *5 (2d Cir. Aug. 12, 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds pro se, ... a court is obliged to construe his pleadings liberally.'" (citations omitted)).  However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.  Anderson, 477 U.S. at 247-48.


**B. Exhaustion**

As a threshold matter, defendants contend that Hamid has failed to exhaust his administrative remedies.  Under 42 U.S.C. § 1997e(a), an inmate must exhaust all administrative remedies prior to bringing any suit challenging prison conditions, including federal civil rights cases.  Porter v. Nussle, 534 U.S. 516, 524 (2002); see also Woodford v. Ngo, 126 S. Ct. 2378, 2382-83 (2006).  This exhaustion requirement applies to all prison

condition claims.  Porter, 534 U.S. at 532.  "[A]ny deprivation that does not affect the fact or

duration of a prisoner's overall confinement is necessarily a condition of that confinement."

Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir. 1999). The exhaustion requirement also

applies even if the administrative grievance process does not provide for all the relief

requested by the inmate.  Nussle, 534 U.S. at 524.

While the Supreme Court has deemed exhaustion mandatory, the Second Circuit has

recognized that "certain caveats apply."  Ruggiero v. County of Orange, 467 F.3d 170, 175

(2d Cir. 2006) (citing Giano v. Goord, 380 F.3d 670, 677 (2d Cir. 2004)).  Exhaustion is

generally achieved through the Inmate Grievance Program (IGP).[11]  See N.Y.Comp. Codes

R. & Regs. tit. 7, § 701.1 et seq. (2007).  However, when inmates fail to follow the IGP, a

court must conduct a three-part inquiry to determine if such failure is fatal to claims.  A court

must consider whether

> (1) administrative remedies are not available to the prisoner; (2) defendants
> have either waived the defense of failure to exhaust or acted in such a way as
> to estop them from raising the defense; or (3) special circumstances, such as
> a reasonable misunderstanding of the grievance procedures, justify the
> prisoner's failure to comply with the exhaustion requirement.

Ruggiero, 467 F.3d at 175 (citing Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004)).

Administrative remedies are unavailable when there is no "possibility of [] relief for the

action complained of."  Abney v. McGinnis, 380 F.3d 663, 667 (2d Cir. 2004) (citing Booth v.

Churner, 532 U.S. 731, 738 (2001)).  The test to determine the availability of an

---

[11] "The IGP is a three-step process that requires an inmate to: (1) file a grievance with the IGRC [Inmate Grievance Resolution Committee]; (2) appeal to the superintendent within four working days of receiving the IGRC's written response, and (3) appeal to the CORC [Central Office Review Committee] . . . within four working days of receipt of the superintendent's written response." Abney v. McGinnis, 380 F.3d 663, 668 (2d Cir. 2004) (internal citations omitted).

10

administrative remedy is an objective one asking whether "a similarly situated individual of ordinary firmness" would have deemed it accessible.  Id. at 688.  Courts have found unavailability "where plaintiff is unaware of the grievance procedures or did not understand it or where defendants' behavior prevents plaintiff from seeking administrative remedies."  Hargrove v. Riley, No. CV-04-4587 (DST), 2007 WL 389003, at *8 (E.D.N.Y. 2007) (internal citations omitted).

Hamid failed to exhaust his administrative remedies as there no evidence that any grievances were filed concerning the physical or sexual abuse he allegedly sustained.  The IGP was freely available to Hamid.  This was demonstrated when Hamid successfully filed an inmate grievance and appealed two grievance denials in 2003, unrelated to the claims here.  Linquist Aff. (Docket No. 40-27) ¶ 11.  Additionally, Hamid testified at his deposition that he was familiar with the grievance procedure from reading The Jailhouse Lawyer's Manual.  Hamid Dep. at 49-50.

Thus, Hamid was familiar with the system.  However, liberally construing Hamid's evidence, Hamid alleges that he (1) found the IGP futile because he had filed multiple grievances in the past that were never directed to the appropriate persons or places, (2) made verbal complaints to Miller during which he was never instructed to file his grievances in writing, and (3) attempted to send the grievances to his mother, which she never received,  so that she could present the grievances on his behalf.  Hamid Dep. at 66-68.  Hamid has produced no other evidence to substantiate his testimony.  There are no copies of grievances that he attempted to mail or any other portion of a paper trail from which to conclude that Hamid was actually submitting the documents in question.

Nevertheless, although implausible, Hamid's testimony on this issue requires a

determination of credibility, a determination that cannot be made on a motion for summary judgment.  See Dillon v. Morano, 497 F.3d 247, 254 (2d Cir. 2007); Reeves v. Johnson Controls World Servs., Inc., 140 F.3d 144, 157 (2d Cir. 1998) ("To the extent that these inconsistencies can only be resolved based upon credibility determinations, such questions of witness credibility are to be decided by the jury."); United States v. Rem, 38 F.3d 634, 644 (2d Cir. 1994) ("Resolutions of credibility conflicts and choices between conflicting versions of the facts are matters for the jury, not for the court on summary judgment.").

Accordingly, defendants' motion should be denied on this ground.[12]

### C. Eleventh Amendment

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  "[D]espite the limited terms of the Eleventh Amendment, a federal court [cannot] entertain a suit brought by a citizen against his [or her] own State."  Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98 (1984) (citing Hans v. Louisiana, 134 U.S. 1, 21 (1890)).  Regardless of the nature of the relief sought, in the absence of the State's consent or waiver of immunity, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment.  Halderman, 465

---

[12]Defendants seek summary judgment on Hamid's Eighth Amendment excessive force claim only on this ground.  If the disposition recommended here as to exhaustion is adopted, then, Hamid's excessive force claim will remain as to defendants Mansueto, Ferraro, Miraldi, Farrell, and Botsford for the events following the incident with Temple on April 1, 2004.

U.S. at 100.  Section 1983 claims do not abrogate the Eleventh Amendment immunity of the states.  See Quern v. Jordan, 440 U.S. 332, 340-41 (1979).

It is clear that Hamid's claims against the State of New York are barred by the Eleventh Amendment.  Additionally, "[a]gencies of the state, such as DOCS, are entitled to assert the state's Eleventh Amendment immunity where, for practical purposes, the agency is the alter ego of the state and the state is the real party in interest."  Santiago v. New York State Dep't of Corr. Servs., 945 F.2d 25, 28 n.1 (2d Cir. 1991) (citing Halderman, 465 U.S. at 100).  Thus, Hamid's claims against DOCS are also barred by application of the Eleventh Amendment.

Furthermore, a suit against a state official in his or her official capacity is a suit against the entity that employs the official.  Farid v. Smith, 850 F.2d 917, 921 (2d Cir. 1988)(citing Edelman v. Jordan, 415 U.S. 651, 663 (1974)).  "Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself," rendering the latter suit for money damages barred even though asserted against the individual officer.  Kentucky v. Graham, 473 U.S. 159, 166 (1985).  Here, defendants are named in both their individual and official capacities.  See Compl. at ¶¶ 8-23.  Hamid seeks monetary damages against defendants in their official capacities in the scope of their respective duties with DOCS.  Thus, the Eleventh Amendment bar applies and serves to prohibit Hamid's claim for monetary damages against the defendants in their official capacities.

Accordingly, it is recommended that defendants' motion for summary judgment as to the State of New York, DOCS, and defendants' in their official capacities be granted.

13

**D. Conspiracy**

Hamid appears to allege that defendants conspired together to conceal the lies which

Temple asserted, testifying falsely, and pursuing and affirming false disciplinary and

criminal charges.

"Section 1985 prohibits conspiracies to interfere with civil rights." Davila v. Secure

Pharmacy Plus, 329 F. Supp. 2d 311, 316 (D. Conn. 2004). To state a claim for relief under

§ 1985(3), a plaintiff must show:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly,
> any person or class of persons of the equal protection of the laws, or of equal
> privileges and immunities under the laws; and (3) an act in furtherance of the
> conspiracy; (4) whereby a person is either injured in his person or property or
> deprived of any right of a citizen of the United States.

United Bhd. of Carpenters & Joiners of Am., Local 610 v. Scott, 463 U.S. 825, 828-29

(1983); see also Iqbal v. Hasty, 490 F.3d 143, 176 (2d Cir. 2007).  In order to demonstrate

that a conspiracy existed, "the plaintiff must prove a mutual understanding or meeting of the

minds to violate [his or] her civil rights." Salgado v. City of N.Y., No. 00-CV-3667 (RWS),

2001 WL 290051, at *8 (S.D.N.Y. Mar. 26, 2001) (citations omitted)."In addition, the

conspiracy must be motivated by some class-based animus." Iqbal, 490 F.3d at 176

(citations omitted).

Here, Hamid does not assert any facts giving rise to a conspiracy.  First, Hamid vaguely

asserts conclusory statements relating to an alleged conspiracy between Miraldi, Allison,

McDonough, Mansueto, Ferraro, Coleman, Miller, Selsky, and Goord.  This is insufficient.

See X-Men Sec., Inc. v. Pataki, 196 F.3d 56, 71 (2d Cir. 1999).  Moreover, there are no

allegations relating to agreements, or even communications, between the  defendants, the

illegal purpose of their alleged conspiracy, or an intent to deprive Hamid of privileges of the

law. Additionally, no evidence exists in the record to support a contention that defendants were motivated by any class-based animus.

Finally, Hamid continually asserts that defendants negligently failed to prevent the deprivation of his rights.  If any defendant "ha[d] knowledge that any of the wrongs . . . mentioned in section 1985 . . . [we]re about to be committed, and ha[d] power to prevent or aid in preventing the commission of the same, [and] neglect[ed] or refuse[d] so to do . . . , [he] shall be liable to the party injured."  42 U.S.C. § 1986.  However, "[a] claim under section 1986 . . . lies only if there is a viable conspiracy claim under section 1985." Gagliardi v. Vill. of Pawling, 18 F.3d 188, 194 (2d Cir. 1994).  No such viable claim exists here.

Accordingly, it is recommended that defendants' motion be granted as to Hamid's conspiracy claim.

## D. Retaliation

Hamid contends that defendants broke his radio and filed disciplinary and criminal charges against him in retaliation for telling Temple during the incident that if she broke his radio, DOCS would have to pay for a new one.

To state an actionable claim for retaliation, a plaintiff must first allege that the plaintiff's conduct was constitutionally protected and that this protected conduct was a substantial factor that caused the adverse action against plaintiff.  Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996).  "Under this analysis, adverse action taken for both proper and improper reasons may be upheld if the action would have been taken based on the

proper reasons alone." <u>Jackson v. Onondaga County</u>, 549 F. Supp. 2d 204, 215 (N.D.N.Y. 2008) (<u>citing</u> <u>Graham v. Henderson</u>, 89 F.3d 75, 79 (2d Cir. 1996)).  Additionally, courts must view retaliation claims with care and skepticism to avoid judicial intrusion into prison administration matters. <u>Id.</u>  Conclusory allegations alone are insufficient.  <u>Id.</u> (<u>citing</u> <u>Flaherty v. Coughlin</u>, 713 F.2d 10, 13 (2d Cir. 1983) (explaining that "claim[s] supported by specific and detailed factual allegations . . . ought usually be pursued with full discovery.")).

The allegedly protected activity here was Hamid's warning to Temple that DOCS would be required to pay for a new radio if she broke his.  However, not every statement made by an inmate to a corrections officer constitutes protected conduct**.**  The statement at issue here was made in the course of an incident, did not constitute a grievance of any kind or contain any other subject matter within the scope of the First Amendment and was simply one statement made in the course of an exchange with Temple concerning Hamid's radio. This statement thus fails to satisfy the protected conduct prong of a retaliation claim.

Accordingly, it is recommended that defendants' motion be granted as to Hamid's retaliation claim.

### E. Fourteenth Amendment

#### 1. Due Process

Hamid contends that defendants violated his due process rights by charging, convicting, and sentencing him on a false misbehavior report, bringing unfounded criminal assault charges, and not allowing Hamid to testify before the grand jury.**[13]**  Defendants contend that

---

[13] Hamid alleges that he did not receive due process in the criminal proceedings, including not allowing him to testify before the grand jury.  DOCS has no responsibility for

Hamid received all required process.

    As a threshold matter, an inmate asserting a violation of his or her right to due process must establish the existence of a protected interest in life, liberty, or property. See Perry v. McDonald, 280 F.3d 159, 173 (2d Cir. 2001). To establish a protected liberty interest, a prisoner must satisfy the standard set forth in Sandin v. Conner, 515 U.S. 472, 483-84 (1995). This standard requires a prisoner to establish that the deprivation was atypical and significant in relation to ordinary prison life.  Id. at 484; Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir.1999); Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir.1996). The fact that an inmate has been disciplined with a SHU confinement alone is insufficient to establish an atypical and significant deprivation.  The Second Circuit has articulated a two-part test whereby the length of time a prisoner was placed in SHU as well as "the conditions of the prisoner's confinement in SHU relative to the conditions of the general prison population" are to be considered.  Vasquez v. Coughlin, 2 F. Supp. 2d 255, 259 (N.D.N.Y.1998) ( citing Brooks v. DiFasi, 112 F.3d 46, 49 (2d Cir.1997)).

        Where an inmate is entitled to due process at a disciplinary hearing, the process an inmate may expect includes "written notice of the charges against them, the opportunity to appear at the hearing and to call witnesses, a written notice of the fact-finder setting out the evidence relied upon and the reason for any disciplinary action taken, and, for illiterate inmates or in complex cases, the aid of fellow inmates to collect and present evidence." Richardson v. Van Dusen, 833 F. Supp. 146, 152 (N.D.N.Y. 1993) (citing Wolff, 418 U.S. at

_____

and control over criminal proceedings and defendants are not, therefore, the proper
parties concerning Hamid's Fifth and Sixth Amendment claims.  Judgment should be
granted to defendants on those claims.

563-67; Freeman v. Rideout, 808 F.2d 949, 954-55 (2d Cir. 1986)).

In this case, defendants do not contest that Hamid did suffered an atypical and significant hardship but contend that he received required due process protections during his disciplinary hearing. On April 2, 2004, Hamid received notice of the hearing. Coleman Aff. (Docket No. 40-13) & Ex. A (Docket No. 40-14) at 1. Additionally, Hamid received assistance from an individual of his choosing, requested and questioned five inmate-witnesses and McDonough, Temple, and Allison, and requested and received the sheets, log book entries, and unusual incident report for his use during the hearing. See generally Coleman Aff., Ex. A. Additionally, Hamid was also present, and actively participating, in all parts of his hearing. Thus, even construing the facts in the light most favorable to Hamid, he can not establish facts sufficient to dispute that he received the required process.

Accordingly, defendants' motion on this ground should be granted.


### 2. Intentional Destruction of Property

As discussed supra, an inmate has a right not to be deprived of property without due process. However, federal courts do not provide redress for the deprivation of property if there is an adequate state court remedy which the petitioner can pursue. Hudson v. Palmer, 468 U.S. 517, 533 (1984). "New York courts provide such a remedy . . . [through the] initiat[ion of] an Article 78 proceeding in New York Supreme Court . . . ." Gabis v. New York City Taxi & Limousine Comm'n, No. 05-CV-8083 (HB), 2005 WL 2560384, at *3 (S.D.N.Y. Oct. 12, 2005); see also N.Y. C.P.L.R. §§ 7803, 7804; see also Locurto v. Safir, 264 F.3d 154, 174 (2d Cir. 2001) ("An Article 78 proceeding permits a petitioner to submit

affidavits and other written evidence, and where a material issue of fact is raised, have a trial of the disputed issue, including constitutional claims.") (citations omitted); <u>Campo v. New York City Employees' Ret. Sys.</u>, 843 F.2d 96, 101 (2d Cir. 1988) ("Article 78 . . . provides a summary proceeding which can be used to review administrative decisions."). State law also provides that "[a]ny claim for damages arising out of any act done . . . within the scope of . . . employment and in the discharge of the duties of any officer or employee of the department [of corrections] shall be brought and maintained in the court of claims as a claim against the state."  N.Y. Corr. Law §24(2).

In this case, Hamid alleges that there was an unconstitutional deprivation of his radio for which he seeks damages.  First, however, the Article 78 procedure exists.  Second, because Hamid sues for damages, he must litigate in the Court of Claims pursuant to Corrections Law § 24.  Thus, construing the facts in the light most favorable to Hamid and assuming that he has effectively exhausted his administrative remedies, the correct venue to litigate the claim is in state court.

Accordingly, defendants' motion for summary judgment should be granted as to this claim.


### 3. False Misbehavior Report

Hamid alleges that defendants submitted a false misbehavior report in violation of his constitutional rights.  As discussed <u>supra</u>, an inmate has a right not to be deprived of a liberty interest without due process.  However, a "prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in

the deprivation of a protected liberty interest."  Freeman v. Rideout, 808 F.2d 949, 951 (2d

Cir. 1986)).  "There must be more, such as retaliation against the prisoner for exercising a

constitutional right."  Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997) (citing Franco v.

Kelly, 854 F.2d 584, 588-90 (2d Cir. 1988)).

        In order to state an actionable claim for retaliation, a plaintiff must first allege that the

plaintiff's conduct was constitutionally protected and that this protected conduct was a

substantial factor that caused the adverse action against plaintiff.  Graham v. Henderson,

89 F.3d 75, 79 (2d Cir. 1996).  However, courts must view retaliation claims with care and

skepticism to avoid judicial intrusion into prison administration matters. Id.  Conclusory

allegations alone are insufficient.  Id. (citing Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir.

1983) (explaining that "claim[s] supported by specific and detailed factual allegations . . .

ought usually be pursued with full discovery.")).

        In this case, Hamid has failed to allege facts sufficient to support a retaliation claim.

First, Hamid's conclusory allegations, absent something else, are insufficient to maintain the

present claim.  Id.  Second, Hamid does not allege that he was engaged in a constitutionally

protected activity at the time of the misbehavior report.  Reading the facts in the light most

favorable to Hamid, prior to the alleged assault, he claims that he was listening to his radio

in his cell.  This activity is not within the gambit of protections envisioned by the due

process clause.

        Moreover, Hamid's claim here runs afoul of the "favorable termination rule of Heck v.

Humphrey, 512 U.S. 477, 487-87 (1994).  That rule provides that if a determination

favorable to the plaintiff in a § 1983 action "would necessarily imply the invalidity of his

conviction or sentence," a plaintiff must prove that the conviction or sentence has been

20

reversed on direct appeal or declared invalid in order to recover damages under § 1983. This rule apples to challenges to procedures used in prison disciplinary proceedings. Edwards. v. Balisok, 520 U.S. 641 (1997).  There is no evidence that Hamid's disciplinary determination was ever vacated, only that his sentence was slightly reduced.  Therefore, because his recovery of damages here for a false misbehavior report would necessarily imply the invalidity of that conviction, his claim here cannot stand.

Accordingly, defendants' motion as to the false misbehavior report claim should be granted.


### F. Malicious Prosecution[14]

To establish a claim for malicious prosecution under § 1983, "the plaintiff must show that a prosecution was initiated against him, that it was brought with malice but without probable cause to believe that it could succeed and that the prosecution terminated in favor of the accused plaintiff."  Boyd v. City of New York, 336 F.3d 72, 76 (2d Cir. 2003).  Additionally, "[a] presumption of probable cause is created. . . by a grand jury's indictment . . . [which] may be overcome by evidence establishing that . . . witnesses have not made a complete

---

[14] Liberally construing Hamid's claims, he also contends that he was falsely arrested.  In order to arrest an individual, there needs to be probable cause, "or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Boyd v. City of New York, 336 F.3d 72, 75-76 (2d Cir. 2003) (internal citations and quotations omitted). Based on the testimony of Temple and the physical injuries the photographs depicting her injuries, there existed reasonable cause to believe that an assault occurred.  Tucker v. Gross, 39 F. Supp. 2d 244, 249-250 (E.D.N.Y. 1999) (holding that in a §1983 claim, "[t]he existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest . . . .") (internal quotations and citations omitted).  Accordingly, defendants are entitled to judgment on Hamid's false arrest claim.

and full statement of facts . . , that they have misrepresented or falsified evidence . . , or otherwise acted in bad faith." Id. (internal citations and quotations omitted).  Finally, after an indictment has occurred, in order to succeed the plaintiff must prove "that the indictment was produced by fraud, perjury, the suppression of evidence or other . . . conduct undertaken in bad faith."  Id. (citations omitted).

In the present case, Hamid cannot establish the second element of malicious prosecution because he was indicted by a grand jury.  This is presumed to establish probable cause.  Without more than Hamid's conclusory allegations of fraud and perjury, even construing the facts in the light most favorable to Hamid, there is no evidence that the indictment was procured in bad faith because there was sufficient evidence reasonably to believe that an altercation occurred which, at the least,  left Temple with an injured hand.

Accordingly, defendants' motion for summary judgment should be granted on this claim.


### G. Personal Involvement

Defendants contend that Hamid has failed to establish supervisory liability for certain of the defendants.

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)).  Thus, supervisory officials may not be held liable merely because they held a position of authority.  Id.; Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996).  However, supervisory personnel may be considered "personally involved" if:

(1) [T]he defendant participated directly in the alleged constitutional violation;

(2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong;

(3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;

(4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or

(5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986)).

### 1. Goord

Hamid contends that Goord, the DOCS Commissioner, was personally involved because Goord was responsible to oversee all DOCS employees, he presumably received the complaints that Hamid sent to him, and he never responded to any of them.  Hamid Dep. at 79-80.

First, failing to "receive a response to a complaint . . . is insufficient to establish personal involvement [especially when] there is no other showing that [defendant] knew of or directly participated in any alleged violation."  Abbas v. Senkowski, No. 03-CV-476 (GLS/DRH), 2005 WL 2179426, at *2 (N.D.N.Y. Sept. 9, 2005).  Thus, Goord's failure to respond to Hamid, without more, does not suffice to establish that he was personally involved.

Second, Goord cannot be held liable solely because he held a supervisory position over other defendants.  Hamid does not specifically contend that Goord was directly involved or

had knowledge of the alleged constitutional violations, created a hiring or retention policy which allowed constitutional violations to continue, or was grossly negligent in managing the other named defendants.  However, even when construing the complaint in the light most favorable to Hamid, no factual basis is established for Goord's personal involvement.

Accordingly, defendants' motion with respect to Goord should be granted on this ground.


### 2. Ellison

Ellison is a supervisory defendant whose only involvement in the present case was approving Hamid's movement to SHU on April 1, 2007.  Defs. Mem. of Law at 20.  A position in a hierarchical chain of command, absent something more, is insufficient to establish personal involvement.  Thus, Ellison cannot be held liable solely because he held a supervisory position over other defendants.  Hamid does not specifically contend that Ellison was directly involved or had knowledge of the alleged constitutional violations.  However, even when construing the complaint in the light most favorable to Hamid, any liberally construed allegations of direct involvement and knowledge still lack any factual basis.

Additionally, Hamid does not even make conclusory allegations that Ellison created a hiring or retention policy which allowed constitutional violations to continue or was grossly negligent in managing other named defendants.  The only allegation that may be construed as such is that Ellison enforced the DOCS policy requiring all inmates accused of assault on a corrections officer to report to SHU until the subsequent disciplinary hearing.  However, this command was within Ellison's authority and was neither unconstitutional nor grossly

24

negligent.

Accordingly, defendants' motion with respect to Ellison should be granted on this ground.

### 3. Botsford

Hamid claims that Botsford and Wells were responsible for using excessive force against, sexually abusing, and verbally harassing him when he arrived at SHU.  Compl. ¶¶ 29-32.

As discussed supra, Wells has neither been served nor otherwise appeared in the action.  As to Botsford, testimony from Farrell indicates that Botsford was not present on the evening of April 1.  Farrell Aff. ¶ 14.  However, construing the complaint in the light most favorable to Hamid, he specifically asserts that both Botsford and Wells were directly involved and responsible for physically abusing and sexually harassing Hamid.  Compl. ¶¶ 29-32.  Accordingly, defendants' motion with respect to Botsford should be denied on this ground.

### 4. Allison and McDonough

Allison approached Hamid on the evening before the incident in question and requested that Hamid turn his radio down if he wished to continue keeping it in his cell.  T. 4, 41-42. However, Allison was not on duty the evening of April 1 and thus "did not witness the incident and ha[s] no personal knowledge regarding the incident."  Allison Aff. (Docket No. 40-4) ¶¶ 6-7; T. 40.  Hamid has offered no evidence to contradict this assertion.  Therefore,

Allison was not directly involved in any incident which occurred on April 1.

McDonough was working on April 1, but at the time of the alleged assault, he was located in a completely different cell block.  T. 45-46.  Additionally, McDonough was not one of the responding officers after Temple returned to the office.  T. 46.  However, McDonough did see Temple after the altercation, noting that she was "visibly upset" and had blood on her hand.  Id.  Although McDonough testifies that he was neither present during the incident nor during the response and escort to SHU, Hamid  asserts that McDonough was present when Temple allegedly broke his radio.  Hamid Dep. at 61.  Therefore, viewing the facts in the light most favorable to Hamid, it appears that McDonough had personal knowledge of and involvement in the aftermath of the altercation.

Neither defendant held a supervisory position and, thus, neither could be responsible for enacting unconstitutional policies or negligently supervising others.  Hamid makes conclusory allegations that, at some juncture, Allison and McDonough were apprised of, and participated in, a plot to conceal Temple's lies by lying during her testimony at the Tier III hearing and by participating in the h criminal proceeding.  Compl. ¶¶ 55, 57-58, 63-65. Despite these conclusory allegations, construing the complaint in the light most favorable to Hamid, it would appear that these defendants had personal knowledge of and participation in the events in question.

Accordingly, defendants' motion with respect to Allison and McDonough should be denied on this ground.

26

**H. Qualified Immunity**

Defendants also contend that they are entitled to qualified immunity.  Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003).  However, even if the constitutional privileges "are clearly established, a government actor may still be shielded by qualified immunity if it was objectively reasonable for the . . . official to believe that his [or her] acts did not violate those rights."  Smith v. City of Albany, No. 03-CV-1157, 2006 WL 839525 *16 (N.D.N.Y. Mar. 27, 2006) (quoting Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted)).

A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights, of which a reasonable person would have known, were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230.  Here, for all but one of Hamid's claims, the second prong of the inquiry need not be reached because, as discussed supra, accepting all of Hamid's allegations as true, he has not shown that defendants violated his constitutional rights.

As to Hamid's Eighth Amendment claim of excessive force against Temple, it was well settled on April 1, 2004 that the Eighth Amendment prohibited a corrections officer from assaulting, sexually abusing, or intentionally inflicting harm on an inmate as Hamid alleges

was done by Mansueto, Miraldi, Ferraro, Farrell, and Botsford following the incident with Temple.  See, e.g., .  Hudson v. McMillian, 503 U.S. 1, 9-10 (1992).  Therefore, it is recommended in the alternative that defendants' motion on this ground be granted in all respects except as to Hamid's claim for excessive force under the Eighth Amendment as to Mansueto, Miraldi, Ferraro, Farrell, and Botsford, as to which defendants' motion on this ground should be denied.


### III.  Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that:

A.  Defendants' motion for summary judgment (Docket No.40) be:

1.  **GRANTED** in all respects except as to Hamid's claim for excessive force under the Eighth Amendment as to defendants Mansueto, Miraldi, Ferraro, Farrell, and Botsford, and that judgment be entered in all respects as to defendants Temple, Allison, Coleman, McDonough, Ellison, Miller, Selsky, Goord, DOCS, and the State of New York;

2.**GRANTED** as to defendants Mansueto, Miraldi, Ferraro, Farrell, and Botsford as to Hamid's claims against them in their official capacities; and

3. **DENIED** as to Hamid's claim for excessive force under the Eighth Amendment as to Mansueto, Miraldi, Ferraro, Farrell, and Botsford; and

B. The complaint be **DISMISSED** as to defendant Wells in all respects pursuant to Fed. R. Civ. P. 4(m) and N.D.N.Y.L.R. 4.1(b).

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO**

**OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE**

**REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892

F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated:  August 19, 2008                    David R. Homer
            Albany, New York              United States Magistrate Judge

29